Good morning, Your Honors. Elizabeth Chilton of Glaser Weill for the appellants. If the Court will permit, I'd like to reserve five minutes of my time for rebuttal. Keep your own time. That's fine. Responding first to the Court's notice to counsel of May 18 concerning the 60B issue. 55C and 60B issues. Go ahead.  Go ahead. Go ahead. Go ahead. Okay. The notice specified a 60B motion, and that is what we're prepared to argue this morning. If the Court would like supplemental briefing on the 55C issue, we would be glad to provide that. But we followed the directions in the Court's notice. There are three reasons why a 60B motion is not required to appeal a default judgment. One, such a requirement would be inconsistent with Federal statute. Two, such a requirement would be inconsistent with the Federal rules. And three, such a requirement would be inconsistent with Federal case law, much of which is from this circuit and by the judges who are on the panel here this morning. So let's take those in order. First is the statute, which is 1291 U.S.C. 28 U.S.C. 1291. Under 1291, a party is entitled to appeal as of right a final judgment to the district court. Default judgments are final judgments of the district court. It is said so on the Court's website in the Court's Guide to Appellate Jurisdiction in the Ninth Circuit. And the case they cite for that proposition is none other than Judge Reimer's decision in the Marcos case. So you have the right to appeal final judgments, and default judgments are final judgments. And no less than the U.S. Supreme Court has said that a Federal court does not have the right or authority to refuse to hear, to refuse to exercise jurisdiction over cases which Congress said the court must hear. And in their case of New Orleans Public Service, Inc. v. Council of the City of New Orleans, it's a 1989 case, the Court said, quote, This is because Congress, and not the judiciary, defines the scope of Federal jurisdiction within the constitutionally permissible bounds. And this Court said the same thing even more recently, 2008, in an en banc opinion, in Harrison v. Olesen. And in Harrison, this Court ruled that it did not have the power to require a certificate of appealability in Federal prisoner. Any of these involve default judgments? So your argument is that 1291 renders Catseer, Frontier, Rohauer, and Lamb wrong? Is that your argument? There's two questions, and I think the answer to yet the two is both. The New Orleans case and Harrison case did not happen to be default judgments, but there are a number of other cases which do expressly involve default judgments. So Catseer, Frontier, Rohauer, and Lamb are all wrong according to your reading of 1291? They don't, to begin with, they don't hold that a 60B motion is required to appeal a default judgment. And I would be glad to go through each one specifically. But none of them hold that. Had they held that, however, they would not be consistent with 1291.  Explain how they don't. Okay. We'll take them one by one. Rohauer did not involve a default judgment at all of any kind. It was a judgment that was entered after a contested trial, and the appellant appealed arguing that after the judgment he had found out that a key document allegedly had been fraudulently altered. And it asked this Court to, quote, what it believed was an alleged fraud on the district court. And what this Court said is, sorry, we don't investigate things. There were two different grounds for refusing to hear the fraud argument. First was that, the Court pointed out, that the appellant had actually stipulated to the authenticity of the document he was now challenging and couldn't change his mind. Second, the Court said, this is evidence, brand new evidence, that was not in front of the district court. We don't take new evidence on appeal. We're not a fact-finding body. You can't appeal this issue to us. But it wasn't a default case. Lamb is the next one. That did not involve the appeal of a default judgment either. That involved the entry appeal, attempted appeal. Of entry of default. And this Court correctly told the appellant, the entry of a default isn't an appealable order. Your remedy to try to set aside a default is a motion under 55C. But that's not this case. The next one was Catseer. And Catseer didn't involve the default, the appeal of a default judgment either. In fact, that was the whole problem. What happened in Catseer was that the appellant was added as a co-debtor to a judgment. And he appealed that. Then after the first appeal, he filed 55C and 60B motions. And those were denied. And he appealed that. This Court said, you can't appeal the denial of the 55C and 60B motions because the district court didn't have jurisdiction to hear them. An appeal had already been filed. Then it turned to the merits of his appeal from the order adding him as a judgment debtor on the judgment. But it said, we can't reach the merits of the judgment itself because you never appealed that. You forgot in your notice of appeal to appeal from the judgment. And appealing the denial of 60B order doesn't bring up the underlying judgment. So, guy, you messed up and you didn't bring it to our attention. But that is certainly not this case. We did appeal the default judgment squarely. The fourth case that was listed in the Court's notice to counsel is the Frontier case. And that was out of the Sixth Circuit. The notice actually did not cite Frontier for any proposition that the 60B motion is, a 60B motion is required to appeal a default judgment because the Frontier case did not say any such thing. What the Frontier case said and did was Frontier, the Court quoted Frontier in its notice to us for the statement that an appeal from a default judgment is actually an appeal from the denial of a Rule 60B motion through which a party seeks relief from the default judgment. The Frontier court cited no law. Frontier may not appeal the entry of default, but it may appeal the failure by the district court to set aside the default entry according to 55C. The entry of default, not a default judgment. In the Frontier case, it was a 55C motion that hadn't been filed. A 60B motion had been filed. So obviously the Frontier court can't say we're not hearing your appeal because you didn't file a 60B motion. A 60B motion was filed. In this case, was there a 55C motion or a 60B motion filed? There was not. And that, with all due respect, simply doesn't matter. Because this Court has held over and over and over again that a Rule 60 motion is not required in order to appeal a final judgment. The first case that I want to draw the Court's attention to is Hal Roach, Hal Roach Studios. In that case, the Court squarely held that a Rule 60 motion is not and cannot be a prerequisite to appealing a final judgment. In that case, what had happened was a Mr. Finer had been sued, but in the original complaint, but he was dropped from the first amended complaint. So he stopped appearing and defending the case. But somehow the district court entered a judgment against him anyway, so he appealed. And the other side in Hal Roach said to him, said to the Court, no, you can't appeal because you didn't make a motion in the district court under Rule 60 to set aside the judgment. And this Court said, no, that's not the law. He doesn't have to make a Rule 60 motion. And they reached the merits of his case, and, in fact, they reversed the judgment that had been entered against him. And what the Court said was on the Rule 60 issue, quote, Since a Rule 60 motion does not toll the time to appeal, nor does an appeal from a denial of Rule 60 relief bring up the underlying judgment for review, such a motion could not be a procedural prerequisite for Richard Finer to file this appeal. Thus, Richard Finer is not procedurally barred from appealing the district court's judgment. And in addition to Hal Roach, this Court has twice specifically held that a 60p motion is not required to appeal a default judgment. That's Madsen and the Alan Newman case. In addition to that, were that not enough, this Court over and over and over again hears and determines on the merits, appeals from default judgments where no 60p motion or 55c motion was ever made. The Court did that as recently as last year in Enri Lebo's decision. Both Judge Trott and Judge Visa were on that panel. Judge Trott, your decision in the Rio case, 2002, no 60b motion, no 55c motion. Again the ---- Are those cases in your brief or your letter? No. We would be very happy to submit a supplemental brief which lays them all out with limited ---- All you have to do is give the citations to our clerk at the end of the hearing. We'll be glad. We will be glad to do that. In addition to all of those decisions, some of the most important cases on discovery sanctions from this Court have been reached on the merits from an appeal from a default judgment imposed as discovery sanctions without either a 55c or 60b motion. Probably the leading case in this circuit, Adriana, was an appeal from a default judgment entered by Judge Rio without a 55c or a 60b motion. Same thing ---- What a shock that Judge Rio was involved. Yes. Well, this is somewhat like deja vu, because the firm with which I was associated at the time substituted in on appeal in Adriana, and we wrote the reply briefs. And I am quite sure, and we verified it with the docket sheet, that there was no 55c or 60b motion filed there. Same thing with Connecticut General. Same thing with fair housing, Marin Fair Housing. It happens over and over and over again. All right. Why don't you move to the merits, then? Very good. Fine. I do have three, only three minutes. We've asked you a lot of questions. It's been a jurisdictional issue. We'll give you leeway fully to address your concerns. Okay, great. Thank you. As far as the merits goes, the key issue here, the first thing which must be established, is that the order that is being reviewed is Judge Rio's order of entry of default, not Judge Wilson's after-the-fact reinterpretation of the record. That is the key question. It is understandable that the fund would prefer to fight the battle over Judge Wilson's opinion, but that is not what is at issue here. It is Judge Rio's entry of default. I'm not quite sure I understand why that has to be so. Because the district court is entitled to revisit any of its prior rulings. So why couldn't Judge Wilson revisit and polish up Judge Rio's ruling? Your Honor, there are two reasons. One is that's not what Judge Wilson did. And number two — He polished it up. Yes, that's a very good way to put it. He polished it up. But he didn't reconsider it. And there may well be, although it is interesting that neither appellants nor the fund has been able to find a case which says so, but it may be that it was possible in this instance for Judge Wilson to reconsider the prior order. But that is most certainly not what he did. What did he do? What he said is that he felt it was, quote, useful to expand upon the reasons for Judge Rio's order. He did not revisit it. He did not reconsider whether the default should have been entered in the first place. What he did is, as Judge Reimer put it, try to polish up the record that Judge Rio had left. But to answer the second part of Judge Wilson's question — So he might be able to reconsider, but he couldn't add Ts, then cross them, add Is, then dot them and polish the whole thing up? It seems that's — Not in this context. And that's the second half of the answer to Judge Reimer's question. And that is this is perhaps sui generis, because in cases of terminating sanctions being imposed for discovery misconduct, the law is absolutely clear. There's five, six, eight — Here we go with an absolutely clear again. But go ahead. I did forget that. Yes. I did forget that. Well, in this case, I am quite comfortable that I am on solid ground here, because there are so many cases which hold that when a court is imposing terminating sanctions for alleged discovery misconduct, the analysis has to be done before the sanctions are imposed and not afterwards. And the reason is obvious. It is to ensure that these doomsday sanctions are not being misused. And cases like Adriana and Malone itself, and there are a number of other cases, Hamilton, Valley Engineers all say — National Medical Enterprises all say that the analysis has to be done before the sanctions are imposed. All right. For the sake of argument, let's accept that. And then what's the matter with Judge Reil's order? Oh, I'm so glad you asked. The — there are two things that are wrong with it. The first is that he did not have the authority under the Federal Rules of Civil Procedure to impose the default on these facts. Those are — it's set out in our briefs, but very quickly, so I don't intrude on the Court's goodwill, there are only three possible sources of authority under which, regardless of the conduct, regardless of the conduct, there are only three possible sources under which terminating sanctions could have been issued in this case. One is 37B. One is 37C. One is inherent powers. And none of them work as a matter of law. 37B doesn't work because 37B requires a prior order compelling discovery. And the only order compelling discovery in this case was Judge Reil's order of April 18. So contrary to the assertions in the default order, appellants could not have been defaulted for anything that happened prior to April 18, 2006, because there was no order compelling discovery prior to that date. They couldn't be defaulted for alleged violations of the April 18 order because that order was not valid. It had to be obeyed, and we did make good faith attempts to obey it, but it couldn't support sanctions because it was issued without notice and without an opportunity to be heard. So that eliminates 37B. 37C is even easier because there, the rule itself, 37C, requires both a noticed motion and an opportunity to be heard before sanctions are imposed. And once again, there was no noticed motion and there was no opportunity to be heard. When prior counsel tried to argue against the default at the hearing, Judge Reil in essence told him to sit down and be quiet. He refused to let him speak. So that eliminates 37C. That leaves only inherent powers. And the law is that inherent powers can't be used if sanctions are not authorized by the Federal rules. So that eliminates that. But even if somehow the Fund were able to get past the express language of the rules, we still have the Malone analysis. And this is true. I'm sorry.  You have the what analysis? The Malone analysis. Malone analysis. Whether or not he abused his, Judge Reil abused his discretion in imposing terminating sanctions as opposed to something else. And this, with all due respect, is truly an egregious case. Egregious case of what? Behavior by your client or Judge Reil's orders? Certainly not by my client. This was a miscarriage of justice. This was a case which was barely a year old, was not even a year old, 10 months, was proceeding to trial quickly, had only one stipulated continuance of two months for settlement negotiations, which did not pan out. But the case was on track. Terminating sanctions were imposed without warning, sua sponte, by the judge. There was no noticed motion on calendar. There was no noticed motion being heard. There was no warning. There was no consideration of any lesser sanctions. There was no imposition of any lesser sanctions. Not so much as a hundred-dollar fine. Not a warning, nothing. Counsel, if we were to accept your argument, to which judge would we refer this for continued proceedings, if any? If this were reversed and remanded, it is now on Judge Wilson's docket. Judge Reel recused himself when my law firm substituted him. So it would go back to Judge Wilson. Okay. The case would return to Judge Wilson. We would not have that issue before us here. Can we just start from Joe again? What the Court would do is reverse the default judgment, remand, and I believe answers were already stricken, but the point is, yes, we would restart it, vacate the default judgment, and allow the case to proceed on its merits. It was headed for trial. The discovery that Judge Reel was looking for has not, still not been satisfied? I'm sorry. I didn't hear that. The discovery has not been completed or satisfied? Well, I believe that after the default was entered, there were extensive subsequent discovery proceedings. On damages. On damages. But I believe in order to do that, that the same documents that were being sought in connection with damages were among the documents that had been sought before. So it is my understanding that this. Well, has the case been settled? No. It is my understanding that discovery had been provided, but if not, then obviously, as counsel in the other case said, we are not playing, you know, there are no shenanigans. If there is, in fact, discovery that wasn't provided, it would be provided. But it is my belief that it had been by the time this case was upheld. I thank the Court for its time and would appreciate the opportunity to say a few words in rebuttal. We'll give you a couple of minutes. We'll hear from the other side. Thank you very much. Good morning, Your Honors. I am Barbara Rabbits, representing Dennis Dry, administrator of the Film Musicians Secondary Markets Fund. I'm here at counsel table is my colleague, Ferris Greenberger. I'm tempted to start where counsel ended and discuss the egregiousness of the conduct here, but I will refrain from doing that and go back and answer the Court's question in its May 18th letter to us. The answer as to whether this Court has jurisdiction over this appeal, because the dependents did not file either a Rule 55 motion or a Rule 60b motion, is not a clear one. Certainly in other circuits, there is clear authority holding that either motion is not a prerequisite for appeal. However, there is no case that I'm aware of in the Ninth Circuit that holds that. And there are a couple of cases counsel mentioned this morning which were not in their briefs that they filed last week, but because I haven't had a chance to look at those, there are two cases in the Ninth Circuit absolutely holding that at least a 60b motion is a prerequisite for appeal, and I will give you those citations in a minute. But the broader point I want to make is counsel is correct that, of course, the Ninth Circuit on many occasions has not decided a case on jurisdictional grounds, but has reached the merits of discovery sanctions cases and in vast majority of cases has affirmed a default judgment, rarely has reversed them, but those cases are important because what they do is they look at the totality of the circumstances. Whether the party filed the 55 and 60 motions is one of the circumstances, but the other circumstances are how bad was their conduct? What did they do to result in a default judgment? Was it somebody who, a pro per, who didn't know how to file an answer correctly? Or was it somebody, as in this case, sophisticated litigants, who repeatedly refused to file core documents that went to the heart of the case, what was the reason for the default judgment? Or was it somebody who lied about it and sworn declarations and violated court order after court order? The point I want to make this morning is, whichever way this Court wants to go, if this Court believes it has no jurisdiction, then there's certainly Ninth Circuit authority to support that. If the Court feels it does have jurisdiction, then the default should be affirmance of the default judgment. The cases I was referring to that hold that in the Ninth Circuit that a 60B motion is a prerequisite for appeal is a case called Consorzio. The citation is 346, Fed 3, 1193, decided in 2003. In that case, a party appealed from a default judgment. And this Court held that when a party appears or not in the case, they must file one or the other of those pre-appeal motions in order to file the appeal. So in Consorzio, and by the way, this case is not cited in the Appellant's letter brief, Consorzio held that, quote, the matter is not properly before this Court, and it dismissed the appeal. There's also another case that followed Consorzio, an unpublished decision by the Ninth Circuit, called Conan Clicky. The citation is 328, Fed 3, Appendix 455. The Westlaw site is 2009, Westlaw 2030120. There's also another case that followed Consorzio, 2009, which said the same facts as Consorzio and said we are compelled by Consorzio to dismiss this appeal. So we have real jurisdiction, we have big heart jurisdiction, and we have cases all over the place. Exactly. All right. Why don't you go on to the merits, then? Okay. The first question is, what are we reviewing? Judge Riehl, to the exclusion. Go ahead. Okay. I did want to give some examples. Go ahead. I wanted to give the Court some examples as to why the cases that defendants have cited in their letter brief as holding that there is no 6db motion required, actually they don't hold that at all. The Madsen and the Allen Newman case, in those cases the party did file a 55c motion. And they construed it here and there. Yes. You're familiar with those cases. I read the cases, sure. That is not this case. No motions were filed here by choice. These are not, as I said, unsophisticated, inexperienced litigants. The defendants have also cited two cases where the Court reached the merits without a 6db motion. But those are, one is called Massa and one is called Cripps. And what you see there is how important it was to the Court in Massa, in looking at the totality of the circumstances, that no pre-appeal motions were filed. The Court said in Massa, technically the appellant has forfeited this issue, but they didn't want to decide it on a technical ground, so they construed, excuse me, I'm reading the wrong one. Massa was a discovery sanction case, and the quote is, we are unable to say the Court's discretion was abused, especially in view of the fact that the appellant did not see fit to set aside the default judgment. The Cripps case was the converse. You had a procured defendant, tried to file an answer, made some minor mistake. The Court didn't file the answer, but didn't tell the defendant. Default was entered. The minute she heard about it, she filed a motion to set aside the default. That was denied. Default judgment was entered. And again, she immediately filed a motion to set aside the default judgment. And in that case, the Ninth Circuit said, we're going to reverse and remand this. Both because she did everything she could do, and because her conduct was virtually blameless. Completely opposite from the conduct here. Okay, getting to the issue of whether we're looking at what Judge Wilson did, or what Judge Real did. We have no problem looking at either one, but we think as a legal proposition, it is absolutely Judge Wilson's ruling which we look at. His judgment. He had, like any district court judge, had the power to revisit, reconsider the default entered by Judge Real. And that's exactly what he did. No one can read Judge Wilson's order. His five-page order. Five pages of his lengthy order. On whether default was properly entered. And conclude that he was just rubber stamping Judge Real and polishing it up. He was making independent findings, and he went back over all the evidence. He was a brand new judge. He didn't know this case. He went back through the record. He went through everything. Not just Judge Real's findings, but he looked at the entire evidence and came to his own conclusions. Where would we be if Judge Real did not recuse himself? And instead had been the author, and instead after having engaged in that initial order, then written the second order? That is perfectly acceptable. If a judge wakes up one morning, and the morning after entering a default says, you know, I really should have done this and that, and I want to polish up my own order. There's absolutely no problem with doing that. Until the judgment is final, these interlocutory orders can be revisited, revised, whether it's the same judge or a different judge. But what's interesting is that appellants are playing games with this court. Because they took the position in their opening brief, and I can give you the citations, page 16, page 17, and I'm going to read you what they said. They say that almost half of the 25 opinion was spent revisiting Judge Real's entry of default. Judge Wilson re-evaluated Judge Real's order. Judge Wilson interpolated his own findings and conclusions. Judge Wilson added his own finding. Again, those are at page 16 and 17 and 58 of their opening brief. Well, then, when we replied that judges can do that, that's perfectly all right. Then they came back and in their reply brief argued for the first time that, oh, no, we know judges can revisit, but that's not what Judge Wilson was doing, which is the argument I heard this morning. He was just improving the reasons. On the one hand, there's nothing wrong with that either. The Marconi case from the United States Supreme Court, which is cited at our brief on page 39, says the district court may open any part of the case at any time prior to the entry of final judgment. And if the reopening is to polish the reasons, that would be okay too. But, as I said, Judge Wilson did much more than that. Wasn't the problem here records and payment? Has any receiver been appointed? No, there hasn't been. Any bankruptcy claim made? I don't believe so. May I consult with the client? Why wasn't the judgment settled and paid? I think the clients, we tried very hard to go through the, my clients were absolutely willing to go through this court's mediation program. We couldn't even get them to agree to a date. Counsel, I think one problem here is that there's only one order that I'm aware of, the April 18th order, to produce discovery. And it could be that terminating sanction appears extreme in those circumstances and without a prior warning except in the judge's local, local rules. Would you like to comment on that? Yes, I certainly would. For one thing, the April 18th order was sufficient, but starting with April 18th is starting in media race. There was, before April 18th, a long, long history of defendants' refusal to produce the documents that were required, refusal to, that were requested in discovery, over and over and over the same documents. There was, they would produce a few pages or many pages and say, look, we gave you documents. And those documents were not the ones that were needed. And this isn't a complicated case. The documents that the fund asked for over and over and over again were the contracts. The documents would show that these defendants had responsibilities for these films and, therefore, they had to pay the fund money so the fund could pay residuals to the film musicians. And these were the bread and butter documents of the defendants. They were not some obscure things that were hidden in storage. And this happened over and over and over. And from the very beginning of the case, long before April 18th, defendants took the position, took many positions, as to why they didn't have to turn over any documents. They said that- Now, I understand all that. I guess I was focused more on the fact that there is only one court order and no prior warning except in the judge's local, local, rural order. Right. There was an April 10th order which, to provide a joint stipulation at a certain date and a certain form that was violated. That is not what the sanctions were ordered for. The April 18th order is, under Rule 37B, is sufficient. It was not the sanction. It was the order that told the defendants, I am giving you five days to produce these documents that you've been asked to produce over and over and over and over again. And to say that they- And by this- The hearing on that order on April- On May 1st, to say there was no warning that a default might be entered is, I have to say, ludicrous. The fund's motion to preclude evidence was pending. The fund's motion to compel discovery was pending. The summary judgment motion had already been briefed where all the defendants had a chance to explain all the reasons they felt they didn't have to produce these documents or they did produce them or they were too busy to produce them because they were working on their summary judgment papers. By May 1st, and by the way, that was- Before 18th, April 18th, and after April 18th, and before default was entered. But the hearing on May 1st was not just a hearing where their lawyer said, may I be heard, and the judge said no. That hearing started out with Judge Rios saying, why haven't you produced the documents I ordered you to produce? Now, that is an opportunity to have a hearing and to answer, and in fact, that's what their lawyer did. He trotted out these same excuses they had been trotting out for months. Oh, we couldn't find them. Oh, this morning we just found 11,000 documents in storage. We didn't know they existed. Well, Judge Rios quite reasonably didn't believe any of that and had a right to make a credibility determination, and he asked again, he said, but why didn't you produce them in time for the fund to respond to your summary judgment motion? Because they were really, their hands were tied in responding to the summary judgment motion. And again, they had reasons. They had excuses. Judge Rios didn't accept them. He didn't believe them, but they certainly had an opportunity. At that point is when Judge Rios said this is going as a default, and that's when counsel said, may I be heard, and Judge Rios said no. And when a judge says that, most lawyers, especially sophisticated, experienced lawyers, you don't stop there. That's exactly what Rule 55 is all about. Why not file a Rule 55 motion or a motion to reconsider and say, Judge, you made a mistake. You never should have entered our default. We didn't do anything wrong, da-da-da-da-da-da, but they didn't. Not only did they not do that, but when the case got to Judge Wilson, and here they had a brand new judge, a judge they could start fresh with, they not only didn't ask that judge to rehear the default, but they affirmatively told him they were not re-arguing the propriety of the default. Of course, they did that out of one side of their mouth. Out of the other side of their mouth, in the same sentence, they asked Judge Wilson to take judicial notice of their entire summary judgment proceedings, and you might wonder what that might have to do with discovery, but the summary judgment proceedings were all about discovery. Now, Judge Wilson didn't say one way or the other whether he did take judicial notice, but again, you don't get a peep from the defendants asking for a ruling on their request for judicial notice. These are people who, every opportunity they had, failed to take advantage of the procedural steps that are permitted and encouraged, possibly required in federal court, and saved up everything for appeal, and they thought that if they raised everything for the first time in this court, then that would be their savior. I'd like to also respond to counsel's remark about the Malone analysis. The Malone analysis may be done before sanctions are ordered, or it may be done afterwards. Most cases, it's done afterward, because, frankly, in most cases, the district judge does not explicitly question the Malone factors. And the rule is, and in fact, this is what happened in Malone itself. And Malone was not the first case. This test had existed long before, even though we now call it the Malone case. But the Malone district court judge didn't go through the factors. So what happens? The job goes to the court of appeal, who then reviews the record de novo and sees if there's evidence in the record to support the sanction. Malone is not an absolute rigid test that must be followed in every case, and certainly does not have to be considered before judgment is entered, before the sanction is issued. And, of course, in any event, since it's Judge Wilson's judgment we're he entered the default judgment. Another point that counsel mentioned had to do with Rule 37B and 37C. Oh, the point was that the April 18th order was not a valid order. We explained at length in our brief how it is definitely a valid order and could definitely support sanctions under Rule 37B. And also 37C works. The opportunity to be heard in, well, they had numerous opportunities to be heard. And if we had all morning, I would read you all the examples. Is there a requirement that they be given warning of what they're looking at? In other words, terminating default sanctions before you enter orders like this? There's no express authority. Of course, the initial order that comes with the case, when you file your case, there is a big warning in block letters. If you don't file the federal rules, there is a possibility that your case will be dismissed. The Valley Engineers case says that this suffices as a warning. But it is impossible to read this record, to know this record, the way Judge Real knew it, and especially the way Judge Wilson knew it, and believe that these people didn't have a clue that they may be defaulted. Now, they knew that there was a preclusion motion against them. And they opposed that. And they knew that was pending. And so they knew there was a possibility that they would not be able to offer any evidence whatsoever at trial. For them not to, which is a tantamount to being defaulted, but for them not to know that they may be, terminating sanctions may be ordered, it just boggles the mind. Because everything was there. Judge Real threatened to throw them into contempt. He said, I'm sending you to jail if you don't come back here the next time with some documents. Thank you, Counsel. You've exceeded your time. I think we've given you plenty of it to make your case. Sarah, will you come up here, please? And you can respond. Sarah's my law clerk. Thank you, Your Honors. Yes, Judge Trott, you certainly do need a warning, and there wasn't one in this case. Counsel is confusing discussion of discovery misconduct with warning that a default terminating sanctions is about to come down on you. Isn't being in Manny Real's court enough of a warning that you're looking at terminating default sanctions? It would be in my case. But our law firm was not counsel of record at that time. I realize that. And I can't answer for their choices. But the reality is, is that these rules that have been developed by the Ninth Circuit were put in place, no disrespect intended, not obviously for Judge Real in particular, but to ensure the possibility that things don't go off the rails like this, to ensure that there is a measured approach regardless of who the judge is and what the circumstances are. Has this gone so far that you really require the relief that you would get in the bankruptcy court or just the appointment of a receiver? I don't believe that. Somebody's trying to just collect a bill. It's quite simple that it's a creditor case. It's not being observed because nobody knows what the measure of the payment is. Well, there would be no need for a receiver or bankruptcy because at least two of these entities are solvent. The reason that the underlying issue of what is owed is something that is a civil dispute, which is properly being, should be properly decided, in this case because of diversity, in a federal court, but in a civil court, there isn't any need for either a receiver or a bankruptcy. The requirements for that haven't been established. It's no different than any other. Either one of those, you can get a writ and send the sheriff out or the marshal out, pick up all the papers and assets and take it under court control until it gets ironed out? I mean, that seems to me, that's the only way you're going to get around somebody that is a bankruptcy. Well, of course, our client's position is nothing close to this is owed, and the dispute would be ironed out in district court. Let me take a couple seconds and answer that question. Why is this so complicated in determining what is owed? Isn't it pretty much basic arithmetic? I believe the reason it is complicated is because the movies were released so long ago that records, ideal records, no longer exist. But it was possible for the district court eventually to calculate what it believed was due and owed. So I don't think it is beyond the ability to calculate that in order to determine what is owed. And that, in fact, was done. We disagreed with the number, but we chose not to challenge that because of the much larger problem, the fact that we were not allowed to put on any defense as to liability in the first instance. We had asserted, for example, that several of these defendants were not liable because they were not the ones who were signatories to the union contract. None of that was litigated because once the default is entered, that ends the issue as to liability. Certainly what happened in this case is not a model that should be put on the table in law schools for lawyers to follow in terms of responding to complaints in federal court, is it? I would not attempt to argue that. But just as perhaps the clients and prior counsel would have made different choices, the reality is now that this has metastasized into something utterly different. And at this point, the issue that the first issue that has to be addressed to unwind this mess is to vacate the default judgment. Counsel said that the Malone analysis can be done afterwards. I'm not aware of any such authority. None was cited in their briefs. None was cited here this morning. That simply is not the law. The other important point is, as I was starting to say, that there is a major difference between warning of a default judgment or a default and being given the opportunity to argue about discovery misconduct. The clients did unquestionably deny that they had engaged in any discovery misconduct. They never argued that they didn't deserve to be defaulted because they had no idea that a default was about to come down on their head. They were given no warning of that at all. Judge Reel's standing July 2005 noticed counsel says nothing more than what Rule 37 says, which is the rules authorize entry of default in appropriate cases. It is not a warning that these particular clients are about to be hit with a default for their conduct in this particular case. Have you read the Consortio case? I have. And what's your reaction to the idea that Federal courts are not run like a casino game in which players may enter and exit on pure whim. A defaulted party may not enter litigation, particularly on appeal, on sheer caprice, and must follow proper procedures to set aside the default. No 55C, no 60B, you're out. There are three huge gaping flaws in Consortio. So it's wrong, but that's what it says. That is what it says, and I'm about to explain why it doesn't apply here and require a 60B motion in this case. It was a three-page opinion written by a panel that did not include any of this morning's judges. It relied, it did not discuss, address, or deal with any of the issues that we have been discussing here this morning. It didn't talk about 1291, it didn't talk about the rule that Federal courts can't refuse to hear cases over which Congress has given them jurisdiction. It didn't talk about the interplay between Rule 60B and Rule 4. Rule 4 requires that an appeal be filed within 30 days after entry of judgment, but Rule 60 gives that same party up to a year to file a motion under Rule 60. And if the party chooses to exercise that right under the rules, FRAP 4 says that it doesn't extend the time to file. So it filed the appeal. So the rules themselves expressly contemplate, permit, and authorize a party to file a notice of appeal from a default judgment without having made a 60B motion. Thank you, Counsel. We've allowed you both to go away over time. We accept your arguments. The case is well briefed, well argued. It is submitted. And as in the other case, we'll get you a decision as soon as we can figure it out. Thank you very much. We'll stand in recess until tomorrow morning. All rise. This group for the session stands adjourned.
judges: Beezer, Trott, Rymer